IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES FOR USE AND BENEFIT OF CANFIELD ELECTRIC, INC., an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES POSTAL SERVICE, FEDERAL INSURANCE COMPANY, and GRINELL FIRE PROTECTION SYSTEMS CO., a Delaware corporation, a Division of Grinell Corporation and a tyco International Ltd. Company, <br><br> Defendants. | No.  00 C 1037 <br><br> Judge Robert W. Gettleman |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Canfield Electric, Inc., has brought a six count second amended complaint against the United States Postal Service ("USPS"), Federal Insurance Co. ("Federal") and Grinell Fire Protection Systems Co. ("Grinell"), seeking to collect amounts allegedly due for electrical work it performed at the Chicago Bulk Mail Center in Forest Park, Illinois. Counts I and IV of the second amended complaint are brought against the USPS, alleging a violation of the Miller Act, 40 U.S.C.§ 270(a) - (d) (Count I), and for unjust enrichment (Count IV).[1] The USPS has moved to dismiss Counts I and IV pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). For the reasons set forth below, the motion to dismiss is granted.

---

[1] Counts II and III are Miller Act claims against Federal and Grinell respectively. Counts IV and VI are against Grinell, alleging fraud in the inducement, and breach of contract.

## Facts

Plaintiff entered into a subcontract agreement with Grinell to provide electrical work associated with a fire alarm system upgrade Grinell was performing for the USPS at the Chicago Bulk Mail Center. The total original subcontract price was $197,000. Plaintiff alleges that including upgrades and extras, there was a total price of $480,200, or $283,200 above the original price. According to the complaint, plaintiff has been paid the original contract price of $197,000, but has not received payment for the additional $283,200, despite repeated demands on Grinell.

Pursuant to the Miller Act[2] Grinell provided a payment bond in the amount of $159,000 and a performance bond in the amount of $318,000. Grinell is the principle and Federal is the surety for both bonds.

## Discussion

In Count I, plaintiff seeks to assert a claim against the USPS pursuant to the Miller Act. Section 270(a) requires the contractor (Grinell) to furnish a payment bond to the United States. If the general contractor fails to pay, persons who have supplied labor or materials may sue the surety and the general contractor to recover under the bond. The Miller Act does not, however, provide subcontractors with a right of recovery against the United States. By its terms, the Miller Act "only gives subcontractors the right to sue on the surety bond posted by the prime

---

[2]The version of the Miller Act in place at the time of the contract in question required a payment bond in the sum of "one-half the total amount payable by the terms of the contract." 40 U.S.C. § 270(a). The Grinell contract was for a total of $318,000, requiring bond in the amount of $159,000.

2

contractor . . .." See Department of the Army v. Blue Fox, Inc., 527 U.S. 255, 264 (1999). Accordingly, the USPS' motion to dismiss Count I is granted.[3]

In Count IV, plaintiff brings a claim for unjust enrichment against the USPS. The USPS has moved to dismiss for a lack of subject matter jurisdiction, arguing that the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 et. seq., specifically preempts district court jurisdiction of a contract suit against the USPS, and requires that the claim be brought before either the Postal Service Board of Contract Appeals or the Court of Federal Claims. 41 U.S.C. §§ 601(2), 605(b). Defendant argues that the CDA precludes actions by subcontractors such as plaintiff, just as it precludes actions by general or prime contractors, as held in Eastern Inc. v. Shelly's of Delaware, Inc., 721 F. Supp. 649 (D. NJ. 1989).

In response, plaintiff acknowledges that the vast majority of courts that have addressed this issue have concluded that the CDA divests district courts of jurisdiction over certain contract claims, including those in which the USPS is a party,[4] but argues that the issue is still open in this circuit, and that this court should reject the majority view based on the broad waiver of sovereign immunity contained in the "sue or be sued" clause in the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 401(1).

---

[3]Plaintiff's reliance on Kennedy Elec. Co, Inc. v. USPS, 508 F.2d 954(10th cir. 1974), to support its Miller Act claim is misplaced. In Kennedy, no Miller Act claim was made because no bonds were furnished. The plaintiff, therefore, sought and received an equitable lien against the USPS for the contract retainage. Because there was no claim under the Miller Act, Kennedy provides no aid to plaintiff on Count I. Moreover, because Kennedy predates the CDA, it lends no support to plaintiff on Count IV as well.

[4]See U.S. ex rel. S&G Excavating, Inc. v. Seaboard Surety Co., 93 F. Supp. 2d 968, 971 (S.D. Ind. 2000) (citing cases); rev'd on other grounds, 236 F.3d 883 (7th Cir. 2001).

3

It is true, as plaintiff argues, that in creating the USPS, Congress provided a broad waiver of sovereign immunity by enacting a "sue or be sued" clause in the PRA, which exposes the USPS to suit. 39 U.S.C. § 401(1). It is presumed that "when Congress launches a governmental agency into the commercial world and endows it with authority to 'sue and be sued', that agency is no less amenable to judicial process than a private enterprise under like circumstances." Franchise Tax Bd. v. United States Postal Service, 467 U.S. 512, 517-18 (1984); see Eastern, 721 F. Supp. at 650. The presumption can be overcome, however, where the waiver of sovereign immunity would conflict with a statutory scheme or where plain congressional intent points toward a restrictive reading of the waiver. Id. (citing Active Fire Sprinkler Corp. v. United States Postal Service, 811 F.2d 747, 752 (2d Cir. 1987)). USPS argues that the CDA is just such a statutory scheme, which requires a restrictive reading of the PRA's "sue or be sued" clause, and preempts this court's jurisdiction over plaintiff's claim.

The CDA was enacted to provide a "comprehensive system for adjudicating contract claims against the government." Prefab Products, Inc. v. United States Postal Service, 600 F. Supp. 89 (Dist. Fla. 1984). "Under the CDA, in all actions brought by or against executive agencies of the United States that involve an express or implied contract entered into by that agency, jurisdiction is vested in either the Postal Service Board of Appeals or the [Court of Federal Claims ("Claims Court")]. Eastern, 721 F. Supp. at 650. The USPS is expressly included as an "executive agency" covered by the CDA. 41 U.S.C. § 601(2). Therefore, the CDA divest this court of all jurisdiction over federal government contract disputes. Id. Accordingly, if plaintiff's claim was based on a contract with USPS, the court would have no jurisdiction over it.

4

Plaintiff has no contract with USPS, however, having entered into a subcontract agreement with Grinell, who in turn contracted with the USPS. The provisions of the CDA do not expressly apply to subcontractors. Carroll v. United States Postal Service, 764 F. Supp. 143, 144 (E.D. Mo. 1991) (citing S. Rep. No. 1118, 95 Cong. 2d Sess. 16-17 reprinted in 1978 USSCAN 5235, 5250-51 (S.R. 1118). The majority of courts that have addressed this issue have concluded: 1) that the legislative history of the CDA reflects a conscious decision to exclude the ability of subcontractors from making direct claims; and 2) the specific purpose of the CDA would be frustrated by allowing such claims. See S&G, 93 F. Supp. 2d at 972.

As noted in S&G, the legislative history of the CDA indicates that "the recommendations of the Procurement Commission specifically exclude bringing subcontractors under the provisions of S. 3178. It is expected that the present sponsorship rules would remain in effect." Id. (citing S.R. No. 95-1118). Rather than allowing subcontractors to proceed against the agency directly in district court, Congress created two avenues through which the subcontractors can pursue their claims. The first is "sponsorship," the pre-CDA practice under which the prime or general contractor sponsored the subcontractor's claim. See Eastern, 721 F. Supp. at 652. "In excluding subcontractors from the provisions of the CDA, Congress expected subcontractors to bring actions against executive agencies via the sponsorship route." Id. (citing S. Rep. No. 1118). The second route available to subcontractors is to bring an action against the surety and general contractor for the bond pursuant to the Miller Act. Neither option, however, gives the subcontractor a direct action in district court against the USPS.

To allow a direct action by a subcontractor against the executive agency would frustrate the purpose of the CDA, which was enacted "to cure the ills associated with the prior system of

5

government contract dispute resolution." Eastern, 721 F. Supp. at 651. That system, which allowed contract disputes to be brought in a number of jurisdictions, including district courts, was "often too expensive and time consuming for the efficient and cost-effective resolution of small claims." Id. (citing S. Rep. No. 1118). The new system, created by the CDA, which restricts contract claims to either the Board of Contract Appeals or the Claims Court, was considered to be more efficient in terms of time and money. Id.

Permitting subcontractors to bring claims against the executive agencies in district court when the general contractor cannot, would increase rather than decrease costs. Every executive agency that entered into a contract with a general contractor would potentially be subject to suit by dozens of subcontractors in district court, which Congress obviously viewed as an inefficient forum for contract dispute resolution. Id. Therefore, this court agrees with the Eastern court's conclusion that the CDA preempts district court jurisdiction over a subcontractor's claim for an equitable lien or unjust enrichment. See also Reilly Electric Supply Co. v. Hight's Enterprises, Inc., 1998 WL 209457 at *2-4 (E.D. La. 1998) (CDA preempts subcontractor action against the USPS for equitable lien on contract retainage); Biebel Bros., Inc. v. United States Postal Service, 772 F. Supp. 1117, 1118 (E.D. Mo. 1991) (CDA preempts subcontractor claim against the USPS for quantum merit); Carroll, 764 F. Supp. at 144-45 (same). Accordingly, the USPS's motion to dismiss Count IV for lack of subject matter jurisdiction is granted.

## Conclusion

For the reasons set forth above, the USPS's motion to dismiss Counts I and IV is granted.

**ENTER:** March 7, 2001

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**Robert W. Gettleman**
**United States District Judge**